Slip Op. 07-159

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
PARKDALE INTERNATIONAL LTD.,    :
                                :
               Plaintiff,       :
                                : Before: Richard K. Eaton, Judge
       v.                       :
                                : Court No. 07-00166
UNITED STATES,                  :
                                :
               Defendant.       :
_____:
```

<u>MEMORANDUM OPINION</u>

[Plaintiff's Motion for a Preliminary Injunction granted.]

Dated: October 31, 2007

*Hunton & Williams, LLP* (*Richard P. Ferrin*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Mark B. Lehnardt*), for defendant.

Eaton, Judge: Before the court are the motion of plaintiff Parkdale International Ltd. ("Parkdale" or "plaintiff") for a preliminary injunction pursuant to USCIT Rule 65(a) and the response to Parkdale's motion of defendant the United States ("defendant").[1] *See* Pl.'s Mot. Prelim. Inj. ("Pl.'s Mot."); Pl.'s Br. Supp. Mot. Prelim. Inj. ("Pl.'s Mem."); Def.'s Resp. Pl.'s Mot. Inj. ("Def.'s Resp."); Def.'s Suppl. Resp. Pl.'s Mot.

---

[1] Pursuant to the temporary restraining order entered on May 18, 2007, the United States is presently restrained from liquidating the entries that are the subject of Parkdale's complaint. *See Parkdale Int'l Ltd. v. United States*, Court No. 07-00166 (CIT May 18, 2007).

Prelim. Inj. ("Def.'s Suppl. Resp."). By its motion, Parkdale seeks to enjoin liquidation of its entries of certain corrosion-resistant carbon steel flat products ("CORE") from Canada, entered on or after September 26, 2000. For the following reasons, the court finds that it has jurisdiction pursuant to 28 U.S.C. § 1581(i)(4) (2000)[2] and grants Parkdale's motion for a preliminary injunction.

BACKGROUND

Parkdale is an importer of CORE from Canada. Compl. ¶ 3. In the early 1990s, CORE was the subject of an antidumping investigation. As a result of that investigation, the United States Department of Commerce ("Commerce" or the "Department") issued an antidumping duty order on CORE from Canada (the "Order") in 1993. *See* Certain CORE and Certain Cut-to-Length Carbon Steel Plate From Canada, 58 Fed. Reg. 44,162 (Dep't of Commerce Aug. 19, 1993) (antidumping duty order). The Order was later amended in 1995. *See* Certain CORE and Certain Cut-to-Length Carbon Steel Plate From Canada, 60 Fed. Reg. 49,582 (Dep't of Commerce Sept. 26, 1995) (amended final determination).

---

[2] Subsection 1581(i)(4) grants this Court exclusive jurisdiction to entertain "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section." 28 U.S.C. § 1581(i)(4).

On September 1, 1999, Commerce and the United States

International Trade Commission ("ITC" or the "Commission")

commenced a "sunset review"[3] of the Order, and determined,

respectively, that revocation of the Order was likely to lead to

the continuation or recurrence of dumping and material injury to

an industry in the United States.  Thus, Commerce published

notice of the continuation of the Order in the Federal Register,

which by its terms was effective as of December 15, 2000.  *See*

Continuation of Antidumping and Countervailing Duty Orders on

Certain Carbon Steel Prods. from Australia, Belgium, Brazil,

Canada, Finland, France, Germany, Japan, South Korea, Mexico,

---

[3]     Administrative reviews, including five-year or "sunset" reviews, are covered in § 1675 of Title 19 of the United States Code.  Subsection 1675(c) provides the general rule for sunset reviews:

> Notwithstanding subsection (b) of this section and except in the case of a transition order defined in paragraph (6), 5 years after the date of publication of—
>
> > (A) . . . an antidumping duty order . . . or
> >
> > (C) a determination under this section to continue an order . . .,
>
> [Commerce] and the Commission shall conduct a review to determine, in accordance with . . . [19 U.S.C. § 1675a], whether revocation of the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of dumping . . . and of material injury.

19 U.S.C. § 1675(c)(1) (2000).

Poland, Romania, Spain, Sweden, Taiwan, and the United Kingdom, 65 Fed. Reg. 78,469, 78,470 (Dep't of Commerce Dec. 15, 2000) (notice).

Five years later, on November 1, 2005, Commerce and the ITC commenced the second sunset review of the Order. *See* Initiation of Five-year ("Sunset") Revs., 70 Fed. Reg. 65,884 (Dep't of Commerce Nov. 1, 2005) (notice). In the second sunset review, while Commerce determined that revocation of the Order would likely result in the continuation or recurrence of dumping, the ITC determined that revocation of the Order would not be likely to lead to the continuation or recurrence of material injury to a domestic industry within a reasonably foreseeable time. *See* Certain Carbon Steel Prods. From Australia, Belgium, Brazil, Canada, Finland, France, Germany, Japan, Korea, Mexico, Poland, Romania, Spain, Sweden, Taiwan, and the United Kingdom, 72 Fed. Reg. 4529 (ITC Jan. 31, 2007) (final determination).[4] As a result, the Order was revoked. *See* 19 C.F.R. § 351.218(a) (2006) (providing for revocation of an order based on a sunset review if either Commerce's or the ITC's determination is negative);

---

[4]     The full text of the ITC's final determination is contained in Volumes I and II of Certain Carbon Steel Products from Australia, Belgium, Brazil, Canada, Finland, France, Germany, Japan, Korea, Mexico, Poland, Romania, Spain, Sweden, Taiwan, and the United Kingdom, USITC Pub. 3899, Inv. Nos. AA1921-197 (Second Rev.); 701-TA-319, 320, 325-327, 348, and 350 (Second Rev.); and 731-TA-573, 574, 576, 578, 582-587, 612, and 614-618 (Second Rev.) (Jan. 2007).

Certain CORE from Australia, Canada, Japan, and France, 72 Fed. Reg. 7010 (Dep't of Commerce Feb. 14, 2007) (notice of revocation) ("Revocation Notice").  In its Revocation Notice, Commerce stated that "[p]ursuant to [19 U.S.C. § 1675(d)(2)][5] and 19 C.F.R. § 351.222(i)(2)(i), the effective date of revocation is December 15, 2005 (*i.e.*, the fifth anniversary of the date of publication in the Federal Register of the notice of continuation of the [Order])."  Revocation Notice, 72 Fed. Reg. at 7011.

Parkdale then brought this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 (2000).[6]  Parkdale seeks judicial review of the effective date of the Revocation Notice and invokes the Court's residual jurisdiction provision, 28 U.S.C. § 1581(i)(4).  Compl. ¶¶ 1, 2.  Parkdale insists that

_____

[5]     This subsection provides that Commerce "shall revoke" an order unless two conditions are met:

>     (A) [Commerce] makes a determination that dumping . . . would be likely to continue or recur, and

>     (B) the Commission makes a determination that material injury would be likely to continue or recur as described in [19 U.S.C. § 1675a(a)].

19 U.S.C. § 1675(d)(2).

[6]     The Administrative Procedure Act provides that a person who has suffered a legal wrong or has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, may seek judicial review of "final agency action for which there is no other adequate remedy in a court . . . ."  *Id*. § 704.

the revocation of the Order should be effective as of September 26, 2000, i.e., the fifth anniversary of the September 26, 1995 amendment to the Order, not December 15, 2005, as Commerce found. Compl. ¶ 3; Pl.'s Mot. 6 n.1. By its motion, Parkdale argues that without a preliminary injunction in place during the pendency of this action its entries, that are covered in the complaint, will be subject to liquidation, which would render its underlying claim moot. Pl.'s Mot. 3. Defendant opposes Parkdale's motion, arguing that the Court does not have jurisdiction to hear Parkdale's underlying claim, and that, in any event, Parkdale has failed to establish that a preliminary injunction is warranted here. Def.'s Resp. 1.

STANDARD OF REVIEW

Parkdale bears the burden of establishing that a preliminary injunction is warranted in light of four factors: (1) the likelihood that Parkdale will succeed on the merits of its claim; (2) that Parkdale will suffer irreparable harm without the requested injunctive relief; (3) that the balance of hardships tips in Parkdale's favor; and (4) that granting the requested relief would not be contrary to the public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citing, *inter alia*, *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)). In determining whether the movant has

carried its burden and satisfied the four-part test, "[n]o one factor, taken individually, is necessarily dispositive." *Id.* Indeed, "[a]s a basic proposition, the matter lies largely within the sound discretion of the [Court]." *Id.* (citations omitted).


                            DISCUSSION

I.   Likelihood of Success on the Merits

     A.   The Court Has Jurisdiction
          Under 28 U.S.C. § 1581(i)(4)

     The Court of Appeals for the Federal Circuit has held that "[t]he question of jurisdiction closely affects the [movant]'s likelihood of success on its motion for a preliminary injunction." *U.S. Ass'n of Imps. of Textiles & Apparel v. United States Dep't of Commerce*, 413 F.3d 1344, 1348 (Fed. Cir. 2005). In its complaint, Parkdale alleges that the Court has jurisdiction under 28 U.S.C. § 1581(i)(4) to hear its challenge to "Commerce's implementation date of the revocation of the [Order], pursuant to the determination by the [ITC] that revocation of this antidumping duty order would not be likely to lead to continuation or recurrence of material injury to the U.S. industry within a reasonably foreseeable time." Compl. ¶ 1. Parkdale argues that providing notice that an order has been revoked is a "ministerial act," not a reviewable determination under 19 U.S.C. § 1516a (2000), and that therefore jurisdiction under 28 U.S.C. § 1581(c) is either not available, or is

"manifestly inadequate." Pl.'s Mem. 3-5. Parkdale insists the Court has jurisdiction to hear its claim under § 1581(i)(4) based on the reasoning set forth in *Canadian Wheat Board v. United States*, 31 CIT __, 491 F. Supp. 2d 1234 (2007) ("*CWB*"). Pl.'s Mem. 4. As the Federal Circuit stated in *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987), "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Id.* (citation omitted); *see also CWB*, 31 CIT at __, 491 F. Supp. 2d at 1240. Thus, the court must address, as an initial matter, defendant's contention that jurisdiction under 28 U.S.C. § 1581(i)(4) is improper because, as defendant asserts, plaintiff could have brought a claim challenging the Revocation Notice under § 1581(c).

Defendant argues that Commerce's decision to revoke the Order is a final determination reviewable under 28 U.S.C. § 1581(c). Defendant bases this argument on Commerce's statement in the Revocation Notice that it was revoking the Order pursuant to 19 U.S.C. § 1675(d)(2). Because final determinations made under § 1675 are expressly referenced in 19 U.S.C. § 1516a(a)(2)(B)(iii), defendant contends that 28 U.S.C. § 1581(c), which grants this Court "exclusive jurisdiction of any civil action commenced under [19 U.S.C. § 1516a]," was available

to Parkdale as the proper basis of the Court's jurisdiction.  *See* 28 U.S.C. § 1581(c); *see also* Def.'s Resp. 3-4; Def.'s Suppl. Resp. 4-6.

The court finds that the reasoning in *CWB* addresses the jurisdiction question presented here and, as in *CWB*, finds that the court has jurisdiction to hear Parkdale's claim under 28 U.S.C. § 1581(i)(4).  In *CWB*, the ITC issued a negative material injury determination with respect to imports of Canadian hard red spring wheat after a North American Free Trade Agreement ("NAFTA") panel[7] remanded the ITC's original, affirmative injury determination.  Accordingly, Commerce published a *Timken* notice[8] and a notice of revocation of the antidumping and countervailing duty orders on Canadian hard red spring wheat.

The notice of revocation indicated that Commerce would

---

[7]    The court notes that the procedural histories of *CWB* and the instant case differ because in *CWB* the parties appealed the ITC's material injury decision to a NAFTA panel instead of this Court, as is their right under article 1904 of NAFTA.  This distinction does not compel a different result in this case because in both cases, plaintiffs sought judicial review of legal conclusions Commerce stated in the notices of revocation, which were not reached in the context of a reviewable determination. *See* discussion *infra* at 11-13.

[8]    Title 19 U.S.C. § 1516a(c)(1) requires that Commerce publish notice of a Court decision "not in harmony" with an original agency determination.  The same rule applies with a NAFTA panel decision.  *See* 19 U.S.C. § 1516a(g)(5)(B). Subsection 1516a(c) was the subject of *Timken Co. v. United States*, 893 F.2d 337, 340 (Fed. Cir. 1990), and notices issued pursuant to that subsection have come to be known as *Timken* notices.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1238 n.4.

instruct Customs and Border Protection to liquidate, without

duties, only those imports that entered the United States after

the effective date of the *Timken* notice.  Entries made prior to

the effective date of the *Timken* notice would be liquidated at

the then-prevailing rates under the antidumping and

countervailing duty orders, even though the foundation of the

orders had been removed.  Plaintiff sought judicial review of

Commerce's legal conclusion that the *Timken* notice would have

prospective effect only and sought an injunction to prevent the

liquidation of entries entered prior to the date of the *Timken*

notice.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1236-39.

The *CWB* Court held that Commerce's conclusion that

liquidation without duties would be prospective only, stated for

the first time in the notice of revocation, was not a reviewable

final determination within the meaning of 19 U.S.C.

§ 1516a(a)(2)(B)(i):

> Commerce's arguments notwithstanding, the
> court finds that the Notice of Revocation is
> not a reviewable final determination under 19
> U.S.C. § 1516a and, as a result, plaintiff
> had no remedy available to it under 28 U.S.C.
> § 1581(c).  While the agency may have had
> internal discussions regarding the contents
> of the Notice of Revocation, its legal
> conclusion that the revocation of the orders
> should be prospective only, was reached
> without notice, public hearings or briefing
> by the parties and was outside of the
> reviewable determinations found in 19 U.S.C.
> § 1516a.  In other words, the Notice of
> Revocation "was *not* made during any
> proceeding that would culminate in a

> determination for which judicial review is
> provided under 19 U.S.C. § 1516a and 28
> U.S.C. § 1581(c)."

*CWB*, 31 CIT at __, 491 F. Supp. 2d at 1241-42 (quoting *Ceramica Regiomontana, S.A. v. United States*, 5 CIT 23, 26, 557 F. Supp. 596, 600 (1983) (emphasis in original)). Thus, because the decision at issue was not a "final determination" subject to judicial review under 19 U.S.C. § 1516a, the Court found that 28 U.S.C. § 1581(c) was not available as a basis for jurisdiction. As a result, the Court held that jurisdiction was proper under 28 U.S.C. § 1581(i)(4) to hear the plaintiff's challenge to Commerce's administration and enforcement of the ITC's negative injury determination. *Id.* at __, 491 F. Supp. 2d at 1243. That is, the Court had the authority to hear a challenge to Commerce's decision that liquidation of entries would be prospective only under § 1581(i) because relief was not available under § 1581(c). As a result, it also had jurisdiction to issue an injunction while the case was being heard.

Defendant attempts to distinguish this case from *CWB* on the ground that *CWB* addressed the meaning of "final determination" in the context of § 1516a(a)(2)(B)(i), not § 1516a(a)(2)(B)(iii). For defendant, because the effective date of the revocation was set in the context of a sunset review rather than following a finding that the Order was invalid *ab initio*, CWB is not valid precedent. Def.'s Resp. 8. The court is not persuaded by this

argument.  Both the antidumping/countervailing duty determination
that was the subject of *CWB* and the sunset review at issue here
are listed as reviewable by the Court pursuant to 19 U.S.C.
§ 1516a.  While § 1516a references decisions made pursuant to
§ 1671d and § 1673d as well as sunset reviews, it does so in the
context of providing for judicial review of "[f]inal
determinations" made pursuant to those sections.  *See* 19 U.S.C.
§§ 1516a(a)(2)(B)(i) (providing for judicial review of "final
affirmative determinations by [Commerce] and by the Commission
under section 1671d or 1673d . . . including any negative part of
such a determination . . .") & (iii) (providing for judicial
review of "[a] final determination . . . by [Commerce] or the
Commission under . . . [19 U.S.C. § 1675]").

Just as in *CWB*, however, the requirement that Commerce's
action be a "final determination" reviewable under 19 U.S.C.
§ 1516a is not satisfied here.  As with the Commerce conclusion
in *CWB* that liquidation, without duties, of the entries covered
by the orders at issue there would be prospective only,
Commerce's conclusion here concerning the effective date of
revocation was not a part of the ITC's final negative injury
determination.  Rather, it was a conclusion made by Commerce
after the final determination was issued.  *See Norsk Hydro Can.,
Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006)
(stating this Court must "look to the true nature of [an] action"

in determining jurisdiction) (internal quotation marks & citation omitted).  Thus, as in *CWB*, Commerce's legal conclusion that the revocation of the Order would be effective as of December 15, 2005, "was reached without notice, public hearings or briefing by the parties and was outside of the reviewable determinations found in 19 U.S.C. § 1516a."  *CWB*, 31 CIT at __, 491 F. Supp. 2d at 1242.  In other words, the Revocation Notice "was *not* made during any proceeding that would culminate in a determination for which judicial review is provided under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c)."  *Ceramica Regiomontana, S.A.*, 5 CIT at 26, 557 F. Supp. at 600 (emphasis in original).  Accordingly, the court concludes that jurisdiction under 28 U.S.C. § 1581(c) was not available to Parkdale to challenge the Revocation Notice.

The court further concludes that jurisdiction under 28 U.S.C. § 1581(i)(4) is available to Parkdale.  Again, *CWB* is instructive.  In *CWB*, the Court analyzed *Consolidated Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003), and *Shinyei Corp. of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), where the Federal Circuit held that § 1581(i) provided the jurisdictional basis for review of Commerce's liquidation instructions.  *See CWB*, 31 CIT at __, 491 F. Supp. 2d at 1242-43.  As the *CWB* Court explained:

> In *Consolidated Bearings*, an importer
> challenged Commerce's liquidation
> instructions to Customs, seeking to compel

the application of the antidumping duty rates from the Department's final determination to its merchandise.  The Federal Circuit confirmed jurisdiction under 28 U.S.C. § 1581(i) after finding that "Consolidated [did] not object to the final results. Rather Consolidated [sought] application of those final results to its entries . . . ." The Federal Circuit based its finding on its conclusion that plaintiff's "case involve[d] a challenge to [Commerce's] 1998 instructions, which is not an action defined under [19 U.S.C. § 1516a]."  The Federal Circuit further found that "[b]ecause Consolidated [was] not challenging the final results, [28 U.S.C. § 1581(c)] is not and could not have been a source of jurisdiction for this case."  Finally, after concluding that jurisdiction did not lie pursuant to § 1581(c), the Federal Circuit found the case "squarely within the provisions of subsection (i)."  Specifically, the Federal Circuit observed that "Commerce's liquidation instructions direct Customs to implement the final results of administrative reviews. Consequently, an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results."

*Id*. at __, 491 F. Supp. 2d at 1242-43 (quoting *Consol. Bearings Co.*, 348 F.3d at 1002; alterations in original).  The *CWB* Court continued:

> Likewise, the Federal Circuit found in *Shinyei Corp. of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), that Commerce's liquidation instructions were reviewable under 28 U.S.C. § 1581(i)(4):
>
> > As we have recently held, a challenge to Commerce instructions on the ground that they do not correctly implement the published, amended administrative review

> results, "is not an action defined
> under [19 U.S.C. § 1516a] of the
> Tariff Act." [19 U.S.C.
> § 1516a] is limited on its face to
> the judicial review of
> "determinations" in countervailing
> duty and antidumping duty
> proceedings.

*Id.* at __, 491 F. Supp. 2d at 1243 (quoting *Shinyei Corp. of Am.*,

355 F.3d at 1309; alterations in original).  Upon concluding its

review of the *Consolidated Bearings* and *Shinyei* cases, the *CWB*

Court reasoned that "if a legal conclusion, found in liquidation

instructions based on Commerce's own final determination, is

reviewable under 28 U.S.C. § 1581(i), then a legal conclusion

found in the Notice of Revocation resulting from an ITC final

determination is too."  *Id.* at __, 491 F. Supp. 2d at 1243.

As with the challenges to agency actions in *Consolidated

Bearings*, *Shinyei* and *CWB*, Parkdale's challenge to the Revocation

Notice is a challenge to the "administration and enforcement" of

the ITC's final negative injury determination in a sunset review,

namely, the effective date of revocation of the Order, not to the

ITC's final determination.  Indeed, "as the prevailing party,

[Parkdale] had no dispute with the ITC's final negative

determination that resulted in the [Revocation Notice]."  *CWB*, 31

CIT at __, 491 F. Supp. 2d at 1242.  The court therefore finds

that Commerce's conclusion that the revocation shall be effective

as of the fifth anniversary of the publication of notice of

continuation of the Order, rather than the fifth anniversary of

publication of the original Order, is reviewable under 28 U.S.C. § 1581(i)(4).

   B.   Parkdale Has Sufficiently Demonstrated
        a Likelihood of Success on the Merits

Having found jurisdiction in this case, the court next turns to whether Parkdale has sufficiently demonstrated that it is likely to succeed on the merits of its claim.  The standard that a party seeking a preliminary injunction must satisfy to establish a likelihood of success on the merits remains unsettled by the Federal Circuit; however, several competing standards have been articulated: (1) whether the movant has raised "serious, substantial, difficult, and doubtful" questions regarding the merits; (2) "[whether] the likelihood of success and harm-related prongs are viewed as a continuum in which the required showing of harm varies inversely with the required showing of meritoriousness"; and (3) "[whether] the movant [has demonstrated] at least a fair chance of success on the merits . . . ."  *U.S. Ass'n of Imps. of Textiles & Apparel*, 413 F.3d at 1347 (internal quotation marks omitted).  This Court recently observed,

> The [Federal Circuit] appears to have
> accepted a sliding scale approach regarding
> the standard for likelihood of success on the
> merits: the greater the potential harm to the
> movant if the court denies injunctive relief,
> the lesser the burden on the movant to make
> the required showing of likelihood of success

on the merits.

*Corus Staal BV v. United States*, 31 CIT __, __, 493 F. Supp. 2d 1276, 1283 n.10 (2007) (citing *Ugine & Alz Belg. v. United States*, 452 F.3d 1289, 1293 (Fed. Cir. 2006); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 895 (Fed. Cir. 1998)).  In any event, it is clear that the court must, at minimum, weigh Parkdale's arguments in favor of its position against those raised in opposition by defendant.  *See U.S. Ass'n of Imps. of Textiles & Apparel*, 413 F.3d at 1347 ("[T]he movant's evidence and arguments must actually be weighed against those of the non-movant to determine whether the movant's likelihood of success meets the applicable standard, whatever that standard may be.") (citations & footnote omitted).

To understand the parties' arguments, a recitation of the relevant statutes and regulations is necessary.  Title 19 U.S.C. § 1675 covers administrative reviews, including sunset reviews. In the case of a review of a transition order, like the Order here,[9] special rules apply.  *See* 19 U.S.C. § 1675(c)(6).  These

---

[9]     A transition order is "an antidumping duty order under [Title 19] . . . which [was] in effect on the date the [World Trade Organization ("WTO")] Agreement enter[ed] into force with respect to the United States."  19 U.S.C. § 1675(c)(6)(C).  The WTO Agreement entered into force in the United States on January 1, 1995.  *See* Proclamation No. 6763, 60 Fed. Reg. 1007 (Jan. 4, 1995).  That date, January 1, 1995, shall be treated as the date a transition order was issued, "if such order is based on an investigation conducted by both [Commerce] and the Commission." 19 U.S.C. § 1675(c)(6)(D).  Here, the Order is a transition
                                                  (continued...)

rules provide a schedule for the initiation and completion of

administrative reviews, including sunset reviews, subsequent

reviews and the revocation of transition orders:

>               (A) Schedule for reviews of transition orders
>
>                   (i) Initiation
>
>                   [Commerce] shall begin its review
>                   of transition orders in the 42d
>                   calendar month after the date such
>                   orders are issued.  A review of all
>                   transition orders shall be
>                   initiated not later than the 5th
>                   anniversary after the date such
>                   orders are issued.
>
>                   (ii) Completion
>
>                   A review of a transition order
>                   shall be completed not later than
>                   18 months after the date such
>                   review is initiated.  Reviews of
>                   all transition orders shall be
>                   completed not later than 18 months
>                   after the 5th anniversary of the
>                   date such orders are issued.
>
>                   (iii) Subsequent reviews
>
>                   The time limits set forth in
>                   clauses (i) and (ii) shall be
>                   applied to all subsequent 5-year
>                   reviews of transition orders by
>                   substituting "date of the
>                   determination to continue such
>                   orders" for "date such orders are
>                   issued".

---

[9](...continued)
order.  It was issued in 1993 and amended in September of 1995.
Thus was in effect as of January 1, 1995.  Moreover, it was based
on an investigation conducted by Commerce and the ITC, and
therefore is to be treated as issued on January 1, 1995.

> > (iv) Revocation and termination
>
> > No transition order may be revoked
> > under this subsection before the
> > date that is 5 years after the date
> > the WTO Agreement enters into force
> > with respect to the United States.

19 U.S.C. § 1675(c)(6)(A).  Revocation of an order, regardless of whether it is a transition order, is governed by 19 U.S.C. § 1675(d)(2), and shall occur when either Commerce or the ITC makes a negative determination.  *See* 19 C.F.R. § 351.218(a). Here, because the ITC made a negative injury determination in the second sunset review, the Order was revoked.

Subsection 351.222(i) of Commerce's regulations set out the rules and procedures that Commerce must follow in revoking an order based on a sunset review.  With respect to the effective date of revocation, Commerce's regulations provide:

> > (i) *In general*.  Except as provided in
> > paragraph (i)(2)(ii) of this section, where
> > [Commerce] revokes an order . . . , pursuant
> > to . . . [19 U.S.C. § 1675(d)(2)] (see
> > paragraph (i)(1) of this section), the
> > revocation . . . will be effective on the
> > fifth anniversary of the date of publication
> > in the Federal Register of the order . . . .
> > This paragraph also applies to subsequent
> > sunset reviews of transition orders (see
> > paragraph (i)(2)(ii) of this section and [19
> > U.S.C. § 1675(c)(6)(A)(iii)]).
>
> > (ii) *Transition orders*.  Where the Secretary
> > revokes a transition order (defined in [19
> > U.S.C. § 1675(c)(6)]) pursuant to . . . [19
> > U.S.C. § 1675(d)(2)] (see paragraph (i)(1) of
> > this section), the revocation . . . will be
> > effective on January 1, 2000.  This paragraph
> > does not apply to subsequent sunset reviews

> of transition orders (see [19 U.S.C.
> § 1675(c)(6)(A)(iii)]).

19 C.F.R. § 351.222(i)(2)(i) & (ii).

It is Parkdale's position that 19 C.F.R. § 351.222(i)(2)(i) unambiguously requires that revocation of the Order shall be effective on the fifth anniversary of the *original Order*, which Parkdale asserts is January 1, 2000, or at the latest September 26, 2000, and not on the "fifth anniversary of the date of publication in the Federal Register of the *notice of continuation of the [Order]*," i.e., December 15, 2005, as Commerce concluded. Revocation Notice, 72 Fed. Reg. at 7011 (emphasis added). Parkdale argues:

> Commerce's interpretation, that the effective date is five years after publication of <u>continuation of</u> the antidumping duty order, is squarely contradicted by the regulation itself. As if the phrase "the revocation . . . will be effective on the fifth anniversary of the date of publication in the Federal Register of the order" is not clear enough, the next sentence of the [19 C.F.R. § 351.222(i)(2)(ii)] drives the point home. The next sentence says that "<u>[t]his paragraph also applies</u> to subsequent sunset reviews of transition orders." This sentence leaves no mistake but that the drafters of the regulation meant for the five years to be counted from the date of the antidumping duty order itself, even if the revocation was pursuant to a subsequent review of a transition order.

Pl.'s Mem. 11 (emphasis in original; internal citation omitted). Thus, Parkdale contends that the plain language of the regulation demonstrates that it is likely to succeed on the merits of its

claim.

For its part, defendant argues that "the statutory and regulatory scheme, as well as Commerce's consistent past practice,[10] demonstrate that revocation of a transition order—pursuant to a second or later sunset review—is effective from the fifth anniversary of the preceding sunset-review notice continuing the order."  Def.'s Resp. 10 (footnote omitted). Specifically, defendant contends:

> [B]ecause 19 C.F.R. § 351.222(i)(2)(i) references 19 U.S.C. § 1675(c)(6)(A)(iii), Commerce's revocations of transition orders, pursuant to second or later sunset reviews, such as that which is the subject of Parkdale's claim here, are effective from the fifth anniversary of the preceding sunset-review notice continuing the order. . . . [P]ursuant to 19 U.S.C. § 1675(c)(6)(A)(iii), the statute substitutes the "'date of the determination to continue such orders' for 'date such orders are issued'" in the conduct of subsequent sunset reviews.  That is, when revoking transition orders in which there have been subsequent reviews, Commerce revokes not from "the fifth anniversary of the date of publication in the Federal Register of the order," but from the fifth anniversary of the date of the determination to continue the order.  This is the only possible interpretation that gives meaning to the reference to 19 U.S.C. § 1675(c)(6)(A)(iii) in the revocation provision.

Def.'s Resp. 11 (citations omitted).

---

[10]     Defendant cites Commerce's decision in Furfuryl Alcohol from Thailand, 72 Fed. Reg. 9729 (Dep't of Commerce Mar. 5, 2007) (final results of second sunset review and revocation of order), among others.  See Def.'s Resp. 12 n.2.

The court finds that Parkdale's argument is sufficient to satisfy this factor of the test for injunctive relief.  At issue is the meaning of subsection 351.222(i)(2)(i).  The parties construe this subsection differently.  The court finds that Parkdale has raised a substantial question regarding the merits of its claim and has demonstrated "at least a fair chance of success on the merits . . . ."  *U.S. Ass'n of Imps. of Textiles & Apparel*, 413 F.3d at 1347 (internal quotation marks omitted).  Moreover, as discussed in Part II, *infra*, the potential harm to the movant if the court were to deny injunctive relief is indisputable.  Therefore, based on the Federal Circuit's "sliding scale" approach, Parkdale's "burden . . . to make the required showing of likelihood of success on the merits" is lessened. *Corus Staal BV*, 31 CIT at __, 493 F. Supp. 2d at 1283 n.10.  The court therefore finds the likelihood of success on the merits factor tips in favor of Parkdale.

II.  Irreparable Harm

Federal Circuit case law favors the granting of a preliminary injunction where it is clear that irreparable harm would result absent the injunction.  *See Ugine & Alz Belg.*, 452 F.3d at 1293 (citing, *inter alia*, *Corus Group PLC v. Bush*, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1353-54 (2002), where the Court stated, "In reviewing the factors, the court employs a 'sliding

scale.' Consequently, the factors do not necessarily carry equal weight. The crucial factor is irreparable injury."). There can be little doubt that Parkdale would suffer irreparable harm if liquidation of the entries entered on or after September 26, 2000, were not enjoined and were it to prevail on the merits. *CWB*, 31 CIT at __, 491 F. Supp. 2d at 1246 ("It has long been established that liquidation renders without meaning a movant's 'statutory right to obtain judicial review' with respect to the liquidated entries and, thus, that the 'consequences of liquidation do constitute irreparable injury.'") (quoting *Zenith*, 710 F.2d at 810). Indeed, the parties do not dispute this point. Thus, the court finds this factor favors granting a preliminary injunction in this case.

III. Balance of Hardships

    "In evaluating whether to grant a motion for injunctive relief, the court must 'determine which party will suffer the greatest adverse effects as a result of the grant or denial of the preliminary injunction.'" *Nat'l Fisheries Inst., Inc. v. United States Bureau of Customs & Border Protection*, 30 CIT __, __, 465 F. Supp. 2d 1300, 1329 (2006) (quoting *Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000)). Parkdale contends that the hardship it would suffer if a preliminary injunction were not granted, i.e., the possibility

of its claims being rendered moot by liquidation of its entries, is comparably much greater than any inconvenience defendant might suffer by continuing to suspend liquidation pending the court's decision on the merits. *See* Pl.'s Mot. 7. The defendant, which has plaintiff's deposits in its possession, does not seriously contend that this is not the case. The court thus finds this factor tips in favor of granting Parkdale's motion.

IV. Public Interest

"[T]he public interest is served by ensuring that [Commerce] complies with the law, and interprets and applies [the] international trade statutes uniformly and fairly." *Ugine-Savoie Imphy*, 24 CIT at 1252, 121 F. Supp. 2d at 690 (internal quotation marks & citations omitted; third alteration in original). Parkdale's complaint raises an important question concerning whether Commerce complied with the law when it concluded that the effective date of the Revocation Notice was the fifth anniversary of the publication of notice of the continuation of the Order, rather than of the original Order. Thus, the public's interest in ensuring that duties are assessed in accordance with law favors granting Parkdale's motion.

CONCLUSION

For the foregoing reasons, the court finds that it has jurisdiction to hear Parkdale's claim under 28 U.S.C. § 1581(i)(4).  In addition, the court finds that Parkdale has demonstrated its entitlement to injunctive relief.  Therefore, it is hereby

ORDERED that Parkdale's motion for a preliminary injunction is granted; and it is further

ORDERED that the parties consult and jointly submit to the court the form of the preliminary injunction on or before November 9, 2007.  The parties' submission shall be made to Casey Ann Cheevers, Case Manager, United States Court of International Trade, One Federal Plaza, New York, New York, 10278.

                                    /s/Richard K. Eaton
                                      Richard K. Eaton


Dated:    October 31, 2007
          New York, New York