# United States Court of Appeals for the Federal Circuit

05-1550

UGINE AND ALZ BELGIUM, ARCELOR STAINLESS USA, LLC,
and ARCELOR TRADING USA, LLC,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

ALLEGHENY LUDLUM, AK STEEL CORP.,
BUTLER ARMCO INDEPENDENT UNION, UNITED STEELWORKERS OF AMERICA,
AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,

Defendants-Appellees.

Wendy E. Ackerman, Shearman & Sterling LLP, of Washington, DC, argued for plaintiffs-appellants. With her on the brief were Stephen J. Marzen, Robert S. LaRussa, Jonathan R. DeFosse, and Ryan A. T. Trapani.

Michael D. Panzera, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Patricia M. McCarthy, Assistant Director. Of counsel on the brief were Ada L. Loo and Arthur Sidney, Attorneys International, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC; and Christopher Chen, Attorney, United States Customs and Border Protection, of Washington, DC.

Adam H. Gordon, Collier Shannon Scott, PLLC, of Washington, DC, argued for defendants-appellees Allegheny Ludlum, et al. With him on the brief were R Alan Luberda and David A. Hartquist.

Charles H. Bayar, of Scarsdale, New York, for amicus curiae.

Appealed from: United States Court of International Trade

Senior Judge Thomas J. Aquilino, Jr.

# United States Court of Appeals for the Federal Circuit

05-1550

UGINE AND ALZ BELGIUM, ARCELOR STAINLESS USA, LLC,
and ARCELOR TRADING USA, LLC,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

ALLEGHENY LUDLUM, AK STEEL CORP.,
BUTLER ARMCO INDEPENDENT UNION, UNITED STEELWORKERS OF AMERICA,
AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,

Defendants-Appellees.

_____

DECIDED:  June 15, 2006
_____

Before LOURIE, BRYSON, and GAJARSA, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

The three appellants, referred to collectively as "Arcelor," appeal from a decision of the Court of International Trade denying a request for a preliminary injunction to prevent U.S. Customs and Border Protection ("Customs") from liquidating certain entries pursuant to liquidation instructions issued by the U.S. Department of Commerce ("Commerce").  Because we conclude that the trial court erred in its analysis of the issue of irreparable harm, we reverse and remand.

I

Arcelor imports stainless steel plate in coils ("SSPC"). In 1998, Commerce initiated antidumping and countervailing duty investigations of SSPC from Belgium. The investigations resulted in the entry of antidumping and countervailing duty orders on Belgian SSPC. Between September 4, 1998, and April 30, 2002, Arcelor imported SSPC for which it declared the country of origin to be Belgium.

Arcelor thereafter determined that it had mistakenly declared Belgium to be the country of origin of its SSPC, whereas it should have declared the country of origin to be Germany. Realizing its mistake, Arcelor filed disclosures and timely protests with Customs under 19 U.S.C. § 1514 to correct the country of origin designation.

During the fourth administrative review of the antidumping order, Arcelor represented that the SSPC that it had imported during the fourth period of review was from Germany. Based on that representation, Commerce determined that Arcelor's entries during that fourth period of review were not subject to the antidumping duty order on SSPC from Belgium. Commerce explained:

> For merchandise hot-rolled in Germany, then pickled and annealed in Belgium, the question for purposes of country of origin is whether the process at issue constitutes substantial transformation. In this case, we determine that because hot rolling constitutes substantial transformation, the country of origin of [Arcelor's] merchandise which is hot-rolled in Germany, and not further cold-rolled in Belgium, is Germany.

Commerce issued draft liquidation instructions and subsequently responded to comments from the parties. In its response, Commerce explained that its antidumping calculations for the fourth administrative review did not include Arcelor's sales of German SSPC. Commerce also stated that during the fourth administrative review "neither the Petitioners nor the Respondent raised this country of origin issue with

respect to any specific sales reviewed during prior administrative reviews of this order or the effect of the country of origin decision on unliquidated entries from prior closed reviews." Commerce therefore ruled that Arcelor's country-of-origin representation would apply to entries covered by the fourth review and future entries, i.e., to entries made on or after May 1, 2002, but not to entries made prior to that date.

Commerce then issued liquidation instructions, directing Customs to liquidate entries that had been the subject of the fourth administrative review "without regard to antidumping duties." Commerce further instructed Customs to liquidate prior Arcelor entries at the respective antidumping and countervailing duty rates for imports from Belgium, even if those entries were in fact hot-rolled in Germany and not further cold-rolled in Belgium.

Arcelor filed administrative protests with Customs for those entries that had already been liquidated. With respect to the entries that had not yet been liquidated, Arcelor filed a complaint in the Court of International Trade challenging Commerce's liquidation instructions. Arcelor requested, and was granted, a temporary restraining order. It then sought a preliminary injunction to prevent Customs from liquidating any of Arcelor's remaining unliquidated entries while the court considered the case. Both the government and the appellees, representing the domestic industry, consented to the entry of a preliminary injunction. The court, however, denied Arcelor's motion and refused to grant an injunction.

In its order denying the injunction, the court rejected Arcelor's argument that it would suffer irreparable harm from the denial of preliminary injunctive relief. In response to Arcelor's contention that liquidation by Customs would render its cause of

action moot and thus deprive Arcelor of its right to judicial review, the court stated that "jurisdiction of the court is not necessarily in jeopardy" because "the plaintiffs claim to have filed timely protests with Customs pursuant to 19 U.S.C. § 1514 which, one could assume, provide them with some current protective comfort." The court also cited Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002), for the proposition that, for entries yet to be liquidated, "misapplication of an antidumping order or the erroneous imposition of antidumping duties by Customs may be protested and suit brought before the court pursuant to § 1581(a)." For that reason, the court stated, "it [is] now difficult to conclude that plaintiffs' procedural posture herein amounts to unequivocal irreparable harm."

In addition, the trial court concluded that Arcelor was not likely to succeed on the merits. Arcelor had contended that because the entries at issue were not yet liquidated, the principle of administrative finality did not prevent Arcelor from correcting the country of origin. Arcelor asserted that its argument in that regard is supported by the decision in Timken Co. v. United States, 972 F. Supp. 702 (Ct. Int'l Trade 1997), aff'd sub nom. Koyo Seiko Co. v. United States, 155 F.3d 574 (Fed. Cir. 1998) (table). The trial court, however, concluded that the Timken case did not support Arcelor's position and that a later order of the Court of International Trade in Torrington Co. v. United States, 24 Ct. Int'l Trade 306 (2000), stood for the opposite proposition. According to the trial court, the Torrington case established that the principle of administrative finality precludes applying a scope determination to unliquidated entries covered by an administrative review that was already closed when the scope issue was first raised. Based on its

conclusion that Arcelor had failed to make a persuasive case of irreparable harm or likelihood of success on the merits, the trial court denied the preliminary injunction.

II

In deciding whether to grant or deny a motion for a preliminary injunction, the court must consider the following four factors:

> 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction will not be contrary to the public interest.

U.S. Ass'n of Importers of Textiles & Apparel v. U.S. Dep't of Commerce, 413 F.3d 1344, 1346 (Fed. Cir. 2005). Whether to grant a preliminary injunction is a matter within the trial court's discretion. Asociacion Colombiana de Exportadores de Flores v. United States, 916 F.2d 1571, 1578 (Fed. Cir. 1990).

In international trade cases, the Court of International Trade is authorized to grant preliminary injunctions barring liquidation in order to preserve the importer's right to challenge the assessed duties. See Yancheng Baolong Biochemical Prods. Co., Ltd. v. United States, 406 F.3d 1377, 1380-81 (Fed. Cir. 2005); Zenith Radio Corp. v. United States, 710 F.2d 806, 809-11 (Fed. Cir. 1983); 19 U.S.C. § 1516a(c)(2). In such cases, we have held that when a court considers whether to grant or deny a preliminary injunction, "[n]o one factor, taken individually, is necessarily dispositive," because "the weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). Moreover, as the Court of International Trade has explained, the "greater the potential harm to the plaintiff, the lesser the burden on Plaintiffs to make the required showing of likelihood of success on the merits." SKF USA Inc. v. United States, 316 F. Supp. 2d 1322, 1329

(Ct. Int'l Trade 2004); see also Ugine-Savoie Imphy v. United States, 121 F. Supp. 2d 684, 689 (Ct. Int'l Trade 2000) ("Where it is clear that the moving party will suffer substantially greater harm by the denial of the preliminary injunction than the non-moving party would by its grant, it will ordinarily be sufficient that the movant has raised 'serious, substantial, difficult and doubtful' questions that are the proper subject of litigation."); Corus Group PLC v. Bush, 217 F. Supp. 2d 1347, 1353-54 (Ct Int'l Trade 2002) ("In reviewing the factors, the court employs a 'sliding scale.' Consequently, the factors do not necessarily carry equal weight. The crucial factor is irreparable injury.").

On appeal, Arcelor first challenges the trial court's conclusion that Arcelor did not show that it was likely to succeed on the merits of its claim. Specifically, Arcelor disputes the government's contention, alluded to by the trial court, that the Timken case requires Commerce to "apply [a] scope determination only as far back as the principle of administrative finality warrants" and "that the principle of administrative finality prohibits Arcelor from reopening the record of the three previous reviews to apply the later-determined country of origin retroactively." Arcelor contends that it is entitled to correct its country-of-origin designations for entries that have not been liquidated because, according to Arcelor, the application of a scope determination to entries that have not yet been liquidated does not constitute a reopening of closed proceedings.

In the cited Timken case, Commerce sought to apply a scope determination in an antidumping proceeding only to entries pertaining to proceedings initiated, but not completed, prior to the date of the scope determination. The Court of International Trade agreed that Commerce was not required to apply its scope determination retroactively to entries all the way back to the beginning of the first period of review.

However, the court ruled that the scope determination should apply to all entries not yet liquidated, even those from an earlier period of review. The court therefore remanded the case to Commerce for further proceedings with respect to the unliquidated entries. The court added, however, that the remand "should in no way be construed as a re-opening or re-review of closed proceedings, as it solely encompasses [entries] not yet liquidated." 972 F. Supp. at 704. Arcelor argues that in light of the analysis in Timken, Commerce must treat all unliquidated entries of SSPC (from whatever period of review) as German, not Belgian, and that the trial court was therefore wrong to hold that Arcelor was unlikely to succeed on the merits of its claim.

In rejecting Arcelor's argument, Commerce relied not on Timken, but on a subsequent administrative proceeding in the Torrington case on which the trial court relied. See Final Results of Redetermination on Remand Final Scope Ruling— Antidumping Duty Order on Cylindrical Roller Bearings and Parts Thereof from Japan— Regarding a Certain Cylindrical Roller Bearing Produced by Koyo Seiko Co., Ltd., and Imported by Koyo Corporation of U.S.A., available at http://ia.ita.doc.gov/remands/98-09-02903.htm. In that administrative proceeding, Commerce construed Timken as permitting Commerce to apply a scope determination "only as far back as the principle of administrative finality permits." Commerce interpreted that term to mean that the scope determination should be applied "back to the first administrative review period open at the time the scope issue was first raised," and to "the subsequent administrative review periods." The Court of International Trade affirmed that decision by Commerce in a summary order, without discussion, in the order cited by the trial court. Torrington Co. v. United States, 24 Ct. Int'l Trade 306 (2000).

In this case, Commerce relied on the Torrington administrative proceedings to define the operation of the principle of administrative finality as applied to unliquidated entries from a closed period of review. Commerce concluded that Arcelor's country-of-origin designations were applicable only to entries in the fourth administrative review period and later. The fact that entries from earlier administrative review periods were still unliquidated was not, according to Commerce, sufficient to warrant treating those entries in the same fashion as entries during the fourth administrative review period and later.

The trial court seems to have accepted Commerce's interpretation of the Timken and Torrington cases, referring to the Torrington case as a "further refinement of the import of subsequent rulings as to the precise scope of an antidumping or countervailing-duty order." Based at least in part on that characterization of Torrington, the trial court concluded that Arcelor had failed to show that it was likely to succeed on its claim that, under Timken, the corrected country-of-origin designations should be applied to all unliquidated entries, regardless of when they may have been imported.

The government and the domestic industry representatives argue that the trial court was correct to view the Torrington case as stating the governing rule for proceedings such as this one—that the principle of administrative finality does not permit reopening of antidumping and countervailing duty determinations for a closed period of review, even for unliquidated entries. However, we are not prepared to conclude, in this interlocutory setting, that Commerce's administrative proceeding or the trial court's summary order in Torrington establishes the governing law for cases such as this one.

On review of the denial of a preliminary injunction, our judgment as to the merits of the plaintiff's case is necessarily tentative. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits [and] it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."); Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 237 F.3d 1359, 1363 (Fed. Cir. 2001) ("all findings of fact and conclusions of law at the preliminary injunction stage are subject to change"). If we were confident of the correctness of the agency's analysis of the "administrative finality" issue, we would be prepared to agree with the trial court that the likelihood of Arcelor's succeeding on the merits is sufficiently low that denial of preliminary injunctive relief would be called for, even if the consequence of denying an injunction would be to render Arcelor's claim moot before it could be finally decided. However, while the trial court's decision as to administrative finality may ultimately be sustained, we are not persuaded that the matter is so clear-cut as to warrant disposing of this appeal based on Arcelor's failure to show a likelihood of success. Accordingly, we look also to factors other than the likelihood of success in determining whether a preliminary injunction should have been granted.

With respect to the balance of hardships, the trial court found in favor of Arcelor, explaining that "whatever harm is actually at bar . . . weighs more on the plaintiffs" because the "government holds cash deposits" and the "interested parties are fully secured." With respect to the public interest, the trial court stated simply that "it is not clear from the record . . . that the public's interest compels entry now of a preliminary injunction in favor of the plaintiffs." The court thus did not find any strong public interest

cutting in favor of denying injunctive relief. Accordingly, the balance of hardships and public interest factors either weigh in favor of Arcelor or are essentially neutral. We therefore turn to the issue of irreparable harm.

Before the trial court, Arcelor argued that it would suffer irreparable harm in the absence of a preliminary injunction because liquidation of the relevant entries would deprive Arcelor of its right to judicial review. Arcelor argued that liquidation during the course of litigation would render the case moot and thus negate any opportunity for Arcelor to challenge Commerce's actions. See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (concluding that "the consequences of liquidation do constitute irreparable injury" because Section 516A of the Trade Agreements Act "permits liquidation in accordance with a favorable decision of the trial court . . . only on merchandise entered after the court decision is published or on entries 'the liquidation of which was enjoined'").

The trial court responded that "jurisdiction of the court is not necessarily in jeopardy," because Arcelor's timely filed protests under 19 U.S.C. § 1514 might "provide them with some current protective comfort." Section 1514, however, relates only to protests of Customs decisions for liquidated entries, see 19 U.S.C. § 1514 (entitled "Protest against Decisions of the Customs Service"). It does not provide a basis for an importer to challenge the lawfulness of a liquidation instruction of the Department of Commerce, as opposed to the lawfulness of an action of Customs. When the importer is challenging instructions given by Commerce, as in this case, this court in Zenith has held that "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits . . . can have no effect on the dumping duties assessed." 710 F.2d at 810.

The trial court referred to this court's decision in <u>Xerox Corp. v. United States</u>, 289 F.3d 792 (Fed. Cir. 2002), and reasoned that Arcelor might bring suit under 28 U.S.C. § 1581(a) for "misapplication of an antidumping order or the erroneous imposition of antidumping duties by Customs." As noted by both Arcelor and the domestic industry representatives, however, <u>Xerox</u> is inapplicable to the circumstances presented here because <u>Xerox</u> involved a "ministerial error [by Customs] in administering [Commerce's] order," 289 F.3d at 793, whereas Arcelor is challenging Commerce's liquidation instructions themselves. Thus, for Arcelor to be assured of a judicial remedy, <u>Xerox</u> would have to be extended to include challenges to liquidation instructions given by Commerce. Yet, as we have noted, the actions of Commerce and the actions of Customs are distinct for purposes of review, <u>see</u> <u>Mitsubishi Elecs. Am., Inc. v. United States</u>, 44 F.3d 973, 977 ("Customs merely follows Commerce's instructions in assessing and collecting duties. . . . Customs has a merely ministerial role in liquidating antidumping duties."), and <u>Xerox</u> applies to challenges to actions by Customs in applying Commerce's instructions, not to challenges to the instructions themselves.

The domestic industry representatives point out, and Arcelor acknowledges, that this court has held that reliquidation of entries is available "in actions brought under the [Administrative Procedure Act] seeking corrected instructions pursuant to section 1675(a)(2)(C)." <u>See</u> <u>Shinyei Corp. of Am. v. United States</u>, 355 F.3d 1297, 1312 (Fed. Cir. 2004). It is unclear, however, whether the rule of <u>Shinyei</u> would apply to a case such as this one. In that case, the importer, Shinyei, complained that Commerce's instructions were inconsistent with rates set forth in the "amended review" that allegedly

covered Shinyei's entries. The Court of International Trade found that "liquidation of the subject entries mooted Shinyei's cause of action," and it dismissed the complaint for lack of subject matter jurisdiction. Id. at 1299. This court reversed. We stated that 28 U.S.C. § 1581(i) provides the trial court with jurisdiction in such a case, because "an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results," and thus falls squarely within 28 U.S.C. § 1581(i)(4). Shinyei, 355 F.3d at 1305 (quoting Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003)). In addition, we explained that our ruling in Zenith was not applicable to Shinyei's cause of action because "liquidation instructions . . . are not 'determinations' under section 1675, and are thus not reviewable under section 516A." Id. at 1309.

At first blush, Shinyei appears to provide Arcelor with an avenue for seeking a judicial remedy even if liquidation occurs, because Arcelor, like Shinyei, challenges only Commerce's liquidation instructions. Yet in Shinyei we noted that Shinyei's complaint alleged a violation of 19 U.S.C. § 1675(a)(2)(C), which provides that the determination resulting from a particular administrative review "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination." We thus focused on the fact that Shinyei was complaining that Commerce's instructions for Shinyei's entries did not reflect the results of the administrative review that covered those entries. See Shinyei, 355 F.3d at 1306; see also id. at 1299, 1309, 1312. Arcelor makes a different argument. In its complaint, Arcelor did not cite section 1675(a)(2)(C), but instead contended that Commerce's instructions for entries imported prior to the fourth administrative review are inconsistent

with Commerce's determination in the subsequent fourth administrative review. Arcelor's challenge to Commerce's instructions can thus be distinguished from the challenge at issue in Shinyei. The difference between the two cases—and the possibility that Shinyei will not be interpreted to encompass the sort of claim at issue here—raises doubt whether Arcelor will have the opportunity to obtain reliquidation once its entries are liquidated, even if it is ultimately found to have a strong case on the merits.

The trial court did not address the question whether Shinyei would provide Arcelor with a procedural vehicle for litigating the merits of its claims, and Arcelor did not address that issue in its opening brief. The government, both in its brief and at oral argument, was unwilling to take a position on that issue. The possibility thus arises that Arcelor could be denied a preliminary injunction to bar liquidation of its entries, only to be met at a later stage with a government argument that its claim has been rendered moot because Shinyei does not permit review of a reliquidation request under the circumstances of this case. Moreover, as has been made clear by the intervening decision of the Court of International Trade in Mukand International, Inc. v. United States, 412 F. Supp. 2d 1312 (2005), the question of the scope of Shinyei is a difficult one, for which the resolution is not obvious. In sum, it is not clear at this juncture that Shinyei would provide an adequate vehicle for Arcelor to litigate its claims before the Court of International Trade. Rather than deciding the scope of Shinyei in a preliminary injunction context, without a decision by the trial court or briefing by two of the three parties, we conclude that the issue is sufficiently complex that we should resolve it only in a setting in which it has been litigated by the parties and decided by the trial court.

Because we conclude that the denial of a preliminary injunction could result in denying Arcelor its opportunity for a decision on the merits of its claim regarding the duties for merchandise imported before May 1, 2002, we hold that Arcelor has made a strong showing of irreparable harm. Based on that showing, we conclude that Arcelor is entitled to a preliminary injunction to maintain the status quo pending the disposition of Arcelor's claims regarding the merchandise imported before May 2002. See Univ. of Tex. v. Camenisch, 451 U.S. at 395 ("[T]he purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held."). Weighing heavily in our consideration is the fact that all parties consented to entry of a preliminary injunction prior to the trial court's ruling (although we do not hold that the trial court was required to grant a preliminary injunction just because the parties consented to one). We therefore conclude that the proper course of action under these circumstances is to reverse the trial court's order and remand for entry of a preliminary injunction and for further proceedings on the merits.

Each party shall bear its own costs for this appeal.

REVERSED and REMANDED.