# United States Court of Appeals for the Federal Circuit

2007-1039

SKF USA, INC., SKF FRANCE S.A.,
and SARMA,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

TIMKEN U.S. CORPORATION,

Defendant.

Herbert C. Shelley, Steptoe & Johnson LLP, of Washington, DC, argued for plaintiff-appellee.  With him on the brief was Alice A. Kipel.  Of counsel was Susan R. Gihring.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant.  With him on the brief were Peter D. Keisler, Assistant Attorney General, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Rachael E. Wenthold, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Appealed from:  United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

2007-1039

SKF USA, INC., SKF FRANCE S.A.,
and SARMA,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

TIMKEN U.S. CORPORATION,

Defendant.

Appeals from the United States Court of International Trade in case no. 03-00490, Judge Evan J. Wallach.

_____

NONPRECEDENTIAL OPINION ISSUED:  August 30, 2007

PRECEDENTIAL OPINION ISSUED:  January 7, 2008
_____

Before RADER, BRYSON, and PROST, Circuit Judges.

PER CURIAM.

The United States appeals from a decision of the Court of International Trade affirming the Department of Commerce's determination of the antidumping duties applicable to certain imports of ball bearings.  SKF USA Inc. v. United States, 452 F. Supp. 2d 1335 (Ct. Int'l Trade 2006).  Because the liquidation of the importers' accounts

for the pertinent period rendered the action moot, we vacate the judgment of the Court of International Trade and remand with directions to dismiss.

I

On May 15, 1989, the Department of Commerce published an antidumping duty order imposing antidumping duties on ball bearings from France. 54 Fed. Reg. 20902 (May 15, 1989). Between May 1, 2001, and April 30, 2002, the appellants (collectively, "SKF") imported ball bearings made in France and deposited estimated duties on those entries at the rate of 11.43%. Customs treated SKF's entries as subject to the antidumping duty order and therefore suspended liquidation of the entries. Upon request, Commerce initiated a review of the antidumping duty rate for SKF's entries during that period. In June 2003, Commerce published the final results of its review and assigned SKF an antidumping duty rate of 10.08%. 68 Fed. Reg. 35623, 35625 (June 16, 2003).

SKF sought review of Commerce's determination by filing an action in the Court of International Trade. On September 15, 2003, SKF asked the court to enjoin liquidation of its covered entries while the case was pending before that court or before this court on appeal. The government agreed that an injunction of liquidation while the case was pending before the trial court would be appropriate, but it disagreed that the injunction should extend through the appeal.

SKF asked for an order enjoining liquidation because without such an order liquidation may occur while the case is pending in the trial court. 19 U.S.C. § 1516a(c)(1). Customs did not liquidate the covered entries while SKF's motion for an injunction was pending. The government argues, however, that the covered entries

were liquidated by operation of law before the trial court ruled on SKF's motion. The government relies on 19 U.S.C. § 1504(d), which directs that, with a few exceptions, Customs must liquidate an entry of goods within six months after receiving notification that Commerce has completed its annual review and removed the suspension of liquidation. If Customs has not liquidated an entry by that time, the entry is deemed liquidated at the amount of duty deposited by the importer at the time of import. Id. In this case, the six-month statutory period ended on December 16, 2003, which was before the trial court ruled on SKF's motion to enjoin liquidation. Based on section 1504(d), the government argues that the covered entries must be considered to have been liquidated on that date.

Under our case law, once liquidation occurs the trial court is powerless to order the assessment of duties at any different rate. See Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983). The government argues that because liquidation was deemed to occur on December 16, 2003, the trial court's subsequent review of Commerce's determination could have no practical effect on the amount of the duty assessed, and the case was therefore moot.

Neither SKF nor the government mentioned the possibility of deemed liquidation to the trial court before the six-month deadline, and proceedings in the trial court continued in the normal course after that deadline passed. On February 18, 2004, the trial court acted on SKF's motion and enjoined the liquidation of SKF's covered entries. Upon considering the merits of the action, the court held that Commerce's determination of the antidumping duty rate was flawed, and it remanded to Commerce for a proper resolution. On remand, Commerce lowered the duty rate by 0.51%.

After Commerce's remand determination, the government for the first time alerted the trial court to the deemed liquidation provision of section 1504(d) and asked the court to dismiss the case as moot. The trial court denied the motion. The court reasoned that because the government consented to SKF's motion for an injunction lasting through trial, "an injunction existed <u>de facto</u> prior to the issuance of the court's actual order" ruling on the motion. The court explained that because the "de facto" injunction came into existence when SKF filed its motion, liquidation was enjoined before section 1504(d) could take effect, and hence the case was not moot. The trial court then considered and affirmed Commerce's remand determination of the antidumping duty rate for the covered entries. The government now appeals.

II

The government's mootness argument is based on the proposition that liquidation of entries covered by an annual review terminates any judicial challenge to the final determination of that review. That proposition stems from our opinion in <u>Zenith Radio Corp. v. United States</u>, 710 F.2d 806 (Fed. Cir. 1983). We noted there that the statutory provision allowing judicial review of an annual review determination has two subsections concerning liquidation. The first subsection states that the trial court may enjoin the liquidation of covered entries and that, absent such an injunction, Customs is to liquidate the entries at the rate determined by Commerce. 19 U.S.C. § 1516a(c). The second subsection states that if the trial court enjoins the liquidation of entries, those entries will be liquidated in accordance with the final decision of the trial court, or of this court on appeal. <u>Id.</u> § 1516a(e). In short, the statutory scheme provides that

entries covered by a challenged review will be liquidated in due course unless the trial court enjoins liquidation.

In Zenith, we noted that "the statutory scheme has no provision permitting reliquidation . . . after liquidation if [the challenge to Commerce's determination] is successful on the merits." 710 F.2d at 810. From the absence of an express provision for reliquidation, we inferred that "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits of [a] challenge can have no effect on the dumping duties assessed." Id. Essentially, the Zenith court concluded that liquidation renders the administrative determination final not only as to Commerce and Customs, but also as to the trial court and this court.

The Zenith court may not have foreseen some of the consequences of the rule it adopted. Indeed, the rule's effect may run counter to a congressional intent to facilitate judicial review of Commerce determinations. See Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1311 n.9 (Fed. Cir. 2004) (noting that "the 1979 Trade Agreements Act . . . created [the judicial review statute, 19 U.S.C. § 1516a,] to allow for increased review of Commerce determinations," and relying on that legislative history to reject the idea that Congress intended the liquidation of entries to moot judicial review). Nonetheless, we have consistently applied the Zenith rule, at least in the context of judicial review under section 1516a. See Belgium v. United States, 452 F.3d 1289, 1296–97 (Fed. Cir. 2006); Yancheng Baolong Biochemical Prods. Co. v. United States, 406 F.3d 1377, 1381 (Fed. Cir. 2005); FMC Corp. v. United States, 3 F.3d 424, 431 (Fed. Cir. 1993). Stare decisis compels us to apply it here.

The Zenith rule renders a court action moot once liquidation occurs. Zenith focused on the fact of liquidation; it did not turn on the nature of the action giving rise to liquidation. There is therefore no reason to conclude that the Zenith rule applies when liquidation occurs by action of Customs but not when it occurs by operation of law. Deemed liquidation, moreover, serves the same policy as liquidation by Customs. Both types of liquidation are designed to close the books on an importer's entries; deemed liquidation simply achieves that result when Customs has not timely done so. Deemed liquidation may be easy to implement and therefore easy to undo because no money changes hands, but that is also true of regular liquidation when the final duty equals the deposited duty. Mootness under Zenith does not depend on the disbursement of funds but rather on the fact of liquidation itself—the decision that an importer's liability has been finalized. Accordingly, we cannot accept SKF's invitation to hold that because the liquidation was effected by statute, rather than by an affirmative act of Customs, the trial court was empowered to grant relief.

The second premise of the government's argument is that section 1504(d), the deemed liquidation statute, applies to the entries covered by the annual review in this case. Section 1504(d) begins with the proviso, "Except as provided in section 1675(a)(3) of this title." Section 1675(a)(3) governs entries reviewed by Commerce in an annual review; it mandates the prompt liquidation of those entries but does not enforce that mandate with deemed liquidation at the cash deposit rate. See 19 U.S.C. § 1675(a)(3)(B) (directing that liquidation "shall be made promptly and, to the greatest extent practicable, within 90 days"). Nonetheless, we have interpreted section 1504(d) to require deemed liquidation at the deposit rate even for entries whose duty rate

Commerce determines in an annual review. See Int'l Trading Co. v. United States ("Int'l Trading II"), 412 F.3d 1303, 1310–12 (Fed. Cir. 2005) (reasoning that to hold deemed liquidation inapplicable to entries subject to section 1675(a)(3) would undermine the congressional intent to limit Customs' ability to postpone liquidation). In that opinion, we also reiterated that the six-month deadline for liquidation under section 1504(d) begins running when Commerce publishes the final results of its administrative review in the Federal Register, not when Commerce later issues liquidation instructions to Customs. See id. at 1308–09 (citing Int'l Trading Co. v. United States ("Int'l Trading I"), 281 F.3d 1268, 1275 (Fed. Cir. 2002)).

SKF argues that our 2005 decision in International Trading II should not apply retroactively to the 2003 events at issue here. SKF contends that in 2003 the parties understood that the six-month liquidation period of section 1504(d) would begin running only when Commerce issued liquidation instructions to Customs, not when Commerce published the final results of its administrative review. SKF informs us that Commerce had not even issued liquidation instructions to Customs before the trial court enjoined liquidation in February 2004. For that reason, SKF argues, it could not have anticipated that its entries would be deemed liquidated in December 2003.

SKF relies on cases stating that the retroactive application of a new law is generally disfavored because it upsets settled expectations and principles of fair notice. See Landgraf v. USI Film Prods., 511 U.S. 244, 267–68 (1994); Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1364 (Fed. Cir. 2005). Those cases, however, concern statutes and administrative rules, not judicial opinions interpreting existing law. Although retroactive application is disfavored for legislation and administrative rules,

judicial interpretations of existing statutes and regulations are routinely given retroactive application on the theory that courts do not make new law but simply state what the statutes and regulations meant before as well as after the court's decision. See Rivers v. Roadway Express, Inc., 511 U.S. 298, 311–12 (1994) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student . . . ."); Landgraf, 511 U.S. at 278–79 & n.32 (noting the "firm rule of retroactivity" for "a new rule announced in a judicial decision"); Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); Halpern v. Principi, 384 F.3d 1297, 1302 (Fed. Cir. 2004) ("[W]here a court announces the meaning of a statute, the court proclaims what the statute has meant since enactment.").

SKF's claim is especially lacking in force in this case because, prior to the relevant events in this case, we had already decided that the time period of section 1504(d) begins running when Commerce publishes the final results of its administrative review in the Federal Register. See Int'l Trading I, 281 F.3d at 1275 ("[P]ublication of the final results in the Federal Register constitutes notice to Customs within the meaning of section 1504(d)."). Although we stated in that case that the timing of deemed liquidation was not essential to our judgment, our description of the rule should have made SKF aware of the high likelihood that we would continue to construe the statute in that manner. Thus, we disagree that SKF had no reason to believe its entries

would be deemed liquidated before Commerce issued liquidation instructions to Customs.

SKF makes the related argument that International Trading II should not be applied retroactively because doing so would result in manifest injustice. SKF cites Bradley v. Richmond School Board, 416 U.S. 696, 711 (1974), as establishing a "manifest injustice" exception to the rule of retroactivity for judicial decisions. The Supreme Court has recently made clear, however, that there is no such exception. Landgraf, 511 U.S. at 279 n.32 ("In 1974, our doctrine on judicial retroactivity involved a substantial measure of discretion, guided by equitable standards resembling the Bradley 'manifest injustice' test itself. While it was accurate in 1974 to say that a new rule announced in a judicial decision was only presumptively applicable to pending cases, we have since established a firm rule of retroactivity." (citations omitted)); Harper, 509 U.S. at 97. Accordingly, SKF's "manifest injustice" argument fails.

SKF also argues that we should decline to apply International Trading II retroactively because doing so would lead to an absurd result contrary to the purposes of section 1504(d) and section 1675, leading cases such as this one to become moot unless the plaintiff meets the requirements for a preliminary injunction. To be sure, a failure to show a likelihood of success on the merits or to satisfy the other prerequisites for a preliminary injunction normally does not lead to the dismissal of a case seeking monetary relief as moot. But SKF's arguments simply reflect disagreement with our decisions in International Trading II and Zenith; they do not justify our ignoring binding precedent.

SKF notes that section 1504(d) was intended to benefit importers, relieving them from facing lengthy delays in liquidation. To the extent that SKF is making a statutory interpretation argument that section 1504(d) does not apply when it adversely affects importers, we reject it. We have already held that section 1504(d) mandates deemed liquidation at the cash deposit rate regardless of whether the cash deposit rate is higher or lower than the rate instructed by Commerce. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1351 & n.7 (Fed. Cir. 2006).

SKF next argues that its covered entries have not yet been deemed liquidated because Customs has not posted a notice of liquidation. That argument is unavailing because liquidation and notice of liquidation are distinct actions. See 19 U.S.C. § 1500; 19 C.F.R. § 159.12(g). A Customs regulation specifically provides that entries liquidated by operation of law under section 1504 are deemed liquidated as of the expiration date of the appropriate statutory period. 19 C.F.R. § 159.9(c)(2)(i); see Koyo Corp. v. United States, 497 F.3d 1231, 1240 (Fed. Cir. 2007) (citing that regulation and stating that a deemed liquidation pursuant to section 1504(d) occurred on the six-month deadline for liquidation, not the later date on which Customs posted notice of the deemed liquidation). Thus, the deemed liquidation here occurred on December 16, 2003. Keeping in mind that it is an entry's status of being liquidated that forecloses reassessment of duties on the entry, we conclude that the case was moot on that date.[1]

---

[1] We note that under our recent decision in Koyo, an importer may obtain liquidation at the rate instructed in Commerce's final review results by timely protesting a deemed liquidation under 19 U.S.C. § 1514(c). Koyo, 497 F.3d at 1241.

Finally, SKF argues that this case is not moot because the trial court enjoined liquidation before deemed liquidation could occur in December 2003. SKF argues that liquidation was enjoined because the government consented to SKF's September 2003 motion to the extent it requested an injunction against liquidation during trial. The problem with that theory is that only the trial court has the power to enjoin liquidation, and the court in this case did not grant SKF's motion until February 2004. The parties' consent cannot establish an injunction; even when facing a consent motion, the trial court must still decide whether it will exercise its equitable power to grant relief. See Belgium, 452 F.3d at 1297 ("[W]e do not hold that the trial court was required to grant a preliminary injunction just because the parties consented to one."); FMC Corp., 3 F.3d at 427 (emphasizing that the trial court must determine whether the movant is likely to succeed on the merits). Although we now know that the trial court would have exercised that power in this case, the record is clear that the court did not issue an injunction before the date of deemed liquidation.

Nor can we accept the trial court's conclusion that a "de facto injunction" existed as of December 16, 2003, or that the February 2004 preliminary injunction was effective nunc pro tunc as of the September 2003 filing date of SKF's motion for injunctive relief. To allow the backdating of an injunction on liquidation that the court granted after the covered entries were liquidated would undermine the rule of Zenith, something this panel cannot do.

2007-1039                                    11

III

In sum, we hold that this case became moot once SKF's entries subject to the administrative review were deemed liquidated on December 16, 2003, pursuant to section 1504(d). Accordingly, we vacate the trial court's judgment and remand with directions to dismiss the case as moot.

<u>VACATED and REMANDED</u>.