# United States Court of Appeals for the Federal Circuit

---

**SUMECHT NA, INC., DBA SUMEC NORTH AMERICA,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, SOLARWORLD AMERICAS, INC.,**
*Defendants-Appellees*

---

2019-1015

---

Appeal from the United States Court of International Trade in No. 1:17-cv-00244-JCG, Judge Jennifer Choe-Groves.

---

Decided: May 8, 2019

---

MARK B. LEHNARDT, Baker & Hostetler LLP, Washington, DC, argued for plaintiff-appellant.

JUSTIN REINHART MILLER, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee United States. Also represented by JOSEPH H. HUNT, REGINALD THOMAS BLADES, JR., JEANNE DAVIDSON, Washington, DC; DAVID W. CAMPBELL, Office of Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce,

Washington, DC.

TIMOTHY C. BRIGHTBILL, Wiley Rein, LLP, Washington, DC, for defendant-appellee SolarWorld Americas, Inc. Also represented by STEPHANIE MANAKER BELL, TESSA V. CAPELOTO, LAURA EL-SABAAWI, CYNTHIA CRISTINA GALVEZ, USHA NEELAKANTAN, ADAM MILAN TESLIK, MAUREEN E. THORSON.

—————————

Before MOORE, CLEVENGER, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Sumecht NA, Inc., dba Sumec North America ("Sumec"), a U.S. importer, sued Appellee the United States ("Government") in the U.S. Court of International Trade ("CIT"), challenging the U.S. Department of Commerce's ("Commerce") liquidation[1] instructions. Sumec filed a motion for a preliminary injunction to enjoin the Government from liquidating certain entries, and the CIT issued an opinion and order denying Sumec's Motion. *Sumecht NA, Inc. v. United States*, 331 F. Supp. 3d 1408, 1412 (Ct. Int'l Trade 2018); *see* J.A. 8–10 (denying reconsideration).

Sumec appeals. We have jurisdiction over this appeal of an interlocutory order pursuant to 28 U.S.C. § 1292(c)(1) (2012). We affirm.

BACKGROUND

I. Legal Framework

Antidumping duties may be imposed on foreign merchandise sold, or likely to be sold, "in the United States at

—————————

[1]    "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1 (2019).

less than its fair value." 19 U.S.C. § 1673(1) (2012). At the conclusion of an investigation, if Commerce and the U.S. International Trade Commission have made the requisite findings, Commerce "shall publish an antidumping duty order" directing U.S. Customs and Border Protection ("Customs") officers to assess duties on imported goods covered by the investigation. *Id.* § 1673e(a). Commerce typically must "determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." *Id.* § 1677f–1(c)(1). "A dumping margin reflects the amount by which the normal value (the price a producer charges in its home market) exceeds the export price (the price of the product in the United States) or constructed export price." *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1220 (Fed. Cir. 2018) (internal quotation marks and footnote omitted); *see* 19 U.S.C. § 1677(35)(A).

Relevant here, Commerce considers China to be a non-market economy country. *See SolarWorld*, 910 F.3d at 1220 n.3. A "nonmarket economy country" is "any foreign country that [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A). "In antidumping duty proceedings involving merchandise from a non-market economy, . . . Commerce presumes that all respondents are government-controlled and therefore subject to a single country-wide rate," unless respondents "rebut this presumption" to demonstrate eligibility for separate rates, i.e., "individual dumping margins . . . for each known exporter or producer." *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1349–50 (Fed. Cir. 2015) (footnote omitted) (citing, inter alia, 19 U.S.C. § 1677f-1(c)(1)).

## II. Factual Background and Procedural History

This appeal relates to Commerce's antidumping duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules ("subject merchandise"), from the People's Republic of China ("China"). *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,018, 73,018 (Dep't of Commerce Dec. 7, 2012) (am. final determination & antidumping duty order). Based on its investigation, Commerce published its final determination, in which it concluded that Sumec's Chinese exporter of subject merchandise, Sumec Hardware & Tools Co., Ltd. ("Hardware"), was separate from the China-wide entity. *See id.* at 73,019. Therefore, Commerce assigned Hardware a separate rate, which was an antidumping duty margin of 24.48%. *See id.* at 73,021. In contrast, Commerce assigned the China-wide entity an antidumping duty margin of 249.96%. *See id.* In August 2015, the 24.48% margin assigned to Hardware was amended to 13.18% pursuant to the U.S. Trade Representative's decision to implement a related World Trade Organization determination. *See Implementation of Determination Under Section 129 of the Uruguay Round Agreements Act*, 80 Fed. Reg. 48,812, 48,818 (Dep't Commerce Aug. 14, 2015); *see* 19 U.S.C. § 3538 (Section 129 of the Uruguay Round Agreements Act).

After Commerce's Final Determination was challenged before the CIT, "Commerce requested and was granted a voluntary remand to reevaluate evidence and reconsider the separate rate eligibility of[, inter alia, Hardware]" due to a "concern for consistency with [Commerce]'s approach to similar issues." *Jiangsu Jiasheng Photovoltaic Tech. Co. v. United States*, 121 F. Supp. 3d 1263, 1267 (Ct. Int'l Trade 2015). Commerce reconsidered Hardware's eligibility for a separate rate and determined that it no longer qualified; instead, Commerce assigned Hardware the China-wide rate. *See id.* The CIT affirmed this determination on

October 5, 2015. *See id.* at 1273. As a result, Commerce published a notice pursuant to *Timken Co. v. United States* ("*Timken* notice"), *see* 893 F.2d 337 (Fed. Cir. 1990),[2] "notifying the public that the final judgment . . . is not in harmony with [Commerce]'s [f]inal [d]etermination . . . in the antidumping duty investigation," and Commerce suspended liquidation of entries in accordance with the CIT's decision, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 80 Fed. Reg. 72,950, 72,950 (Dep't Commerce Nov. 23, 2015) (notice). Although Commerce published the *Timken* notice on November 23, 2015, i.e., forty-nine days after the CIT issued its opinion in *Jiangsu Jiasheng*, the *Timken* notice listed an effective date of "October 15, 2015," which is ten days after the issuance of *Jiangsu Jiasheng*. *Id.*

In December 2015, Commerce issued amended cash deposit instructions, instructing Customs to collect cash deposits on subject merchandise exported by Hardware at the China-wide rate of 238.95%[3] for any entries made after

---

[2] In *Timken*, we explained that, "[i]f the CIT (or this court) renders a decision which is not in harmony with Commerce's determination, then Commerce must publish notice of the decision within ten days of *issuance* (i.e., entry of judgment), regardless of the time for appeal or of whether an appeal is taken." 893 F.2d at 341.

[3] During the first annual administrative review of the antidumping duty order, Commerce assigned a China-wide rate of 238.95%, which "equals the [previously assigned China]-wide entity rate of 249.96% adjusted for export subsidies and estimated domestic subsidy pass-through." *Crystalline Silicon Photovoltaic Cells, Whether or not Assembled into Modules, from the People's Republic of China*, 80 Fed. Reg. 40,998, 41,002 n.50 (Dep't of Commerce July 15, 2015) (final admin. review); *see id.* at 41,002.

October 15, 2015. J.A. 74–75. In March 2016, Commerce issued liquidation instructions, ordering Customs to liquidate "all entries" for Hardware "at the cash deposit . . . rate in effect." J.A. 82.

Sumec filed a complaint pursuant to 28 U.S.C. § 1581(i). *See* J.A. 52; *see also* 28 U.S.C. § 1581(i) (setting forth the CIT's "exclusive jurisdiction" over actions that arise out of laws "providing for," inter alia, "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," and "administration and enforcement" of matters related to the CIT's other bases for jurisdiction). Sumec challenged Commerce's liquidation instructions and its decision to assess the China-wide rate on Hardware's entries of subject merchandise during a thirty-nine-day period covering October 15, 2015, to November 23, 2015. J.A. 58, 60–61. According to Sumec, Commerce should have set the "date for the change in liquidation rate as the date of publication of the *Timken* [n]otice," i.e., November 23, 2015, rather than October 15, 2015. J.A. 56. Sumec alleges that Hardware made entries of subject merchandise during this thirty-nine-day period, which should have been subject to the separate rate of 13.18% rather than the China-wide rate of 238.95%. *See* J.A. 56–57.[4] Sumec filed its Motion, seeking

---

[4] Separately, Hardware challenged Commerce's margin calculation in an administrative review of a countervailing duty order covering the same type of merchandise. *See* Compl. ¶¶ 1, 11–24, *Sumec Hardware & Tools Co. v. United States*, No. 1:18-cv-00186-JAR (Ct. Int'l Trade Aug. 31, 2018), ECF No. 6. In that action, the CIT issued a statutory injunction enjoining the Government "from issuing instructions to liquidate" subject merchandise exported by Hardware "[t]hat were entered . . . on or after January 1, 2015 up to and including December 31, 2015."

to enjoin liquidation of these entries.  J.A. 103.  The CIT denied Sumec's Motion.  *Sumecht*, 331 F. Supp. 3d at 1412.

DISCUSSION

I. Standard of Review and Legal Standard

We review the CIT's preliminary injunction determination for an abuse of discretion.  *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir. 2014).  The CIT abuses its discretion if it "made a clear error of judgment in weighing the relevant factors or exercised its discretion based on an error of law or clearly erroneous fact finding.  To the extent [the CIT]'s decision to grant or deny a preliminary injunction hinges on questions of law, [our] review is de novo."  *Id.* (internal quotation marks and citations omitted).

To receive a preliminary injunction, the movant must show "(1) likelihood of success on the merits, (2) irreparable harm absent immediate relief, (3) the balance of interests weighing in favor of relief, and (4) that the injunction serves the public interest."  *Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  Although "preliminary injunctions against liquidation have become almost automatic" in antidumping and countervailing duty cases, they are "an extraordinary remedy never awarded as of right."  *Wind Tower*, 741 F.3d at 95 (internal quotation marks and citation omitted).

II. The CIT Did Not Abuse Its Discretion in Denying
Sumec's Motion for a Preliminary Injunction

The CIT held that "Sumec has failed to show irreparable harm."  *Sumecht*, 331 F. Supp. 3d at 1412.  The CIT

---

Order for Statutory Inj. upon Consent 1–2, *Sumec Hardware & Tools Co. v. United States*, No. 1:18-cv-00186-JAR (Ct. Int'l Trade Aug. 31, 2018), ECF No. 8 ("Statutory Inj.").

rejected Sumec's allegations of "financial hardship" due to the "amount of duties owed" because "Sumec [did] not specify any concrete, individualized harm" or "proffer further evidence in support of its allegations." *Id.* The CIT also rejected Sumec's claim that a preliminary injunction should issue because the possibility of reliquidation[5] was "unclear." *Id.* Based on this finding of no irreparable harm, the CIT determined it did not need to "address the remaining three factors" for a preliminary injunction. *Id.* Following Sumec's motion for reconsideration, the CIT denied this request, explaining that a preliminary injunction in this case involving a challenge to antidumping duties was not necessary "because Sumec ha[d] already obtained its desired relief through the grant of [the S]tatutory [I]njunction in a separate proceeding [challenging countervailing duties]," as both cases covered "the same entries at issue" and therefore the injunction in the countervailing duty case prevented liquidation of the entries here. J.A. 9 (citation omitted).[6]

---

[5] Reliquidation "is the *re-calculation* of the duties or drawback accruing on an entry" subsequent to liquidation. *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1310 n.8 (Fed. Cir. 2004) (internal quotation marks omitted).

[6] The Government contends Sumec's request for a preliminary injunction to prevent liquidation of its entries at the China-wide rate is moot because of the Statutory Injunction preventing liquidation of the same entries in the countervailing duty case. *See* Appellee's Br. 16–17. We disagree. The party asserting mootness bears the burden of demonstrating that (1) "there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation

Sumec contends the CIT abused its discretion by basing its decision on the Statutory Injunction, which was issued in the separate, countervailing duty case. *See* Appellant's Br. 20. Sumec also argues the CIT's irreparable harm determination is "directly contrary to this court's holdings in *Ugine* [*& ALZ Belgium v. United States*] and *Am*[*erican*] *Signature*[*, Inc. v. United States*]," which contemplate the availability of reliquidation. *Id.* at 15 (capitalization modified); *see id.* at 15–20 (first citing 452 F.3d 1289 (Fed. Cir. 2006); then citing 598 F.3d 816 (Fed. Cir. 2010)). We disagree.

Sumec has not demonstrated that it will be irreparably harmed absent immediate relief in the form of a preliminary injunction. First, Sumec's subject merchandise is covered by the Statutory Injunction in the corresponding countervailing duty case, meaning these same entries cannot be liquidated at this time. The threat of liquidation is typically sufficient to demonstrate irreparable harm

---

marks, ellipsis, and citations omitted); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (discussing the burden of proof). The Government fails to meet this burden because the relief offered by the Statutory Injunction in the countervailing duty case is temporary—it is only effective "during the pendency of [that] litigation, including any appeals." Statutory Inj. at 1. Such temporary relief does not "completely and irrevocably eradicate[]" the potential for harm in the antidumping duty case. *Davis*, 440 U.S. at 631; *cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (holding that, where a plaintiff challenged a certain practice, a city's voluntarily imposed moratorium on that practice did not moot the action because "the moratorium by its terms is *not permanent*," such that "[i]ntervening events have not irrevocably eradicated the effects of the alleged violation" (emphasis added) (internal quotation marks and citation omitted)).

because liquidation may moot further judicial relief in challenges to administrative proceedings. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983) ("[L]iquidation would . . . eliminate the only remedy available to [the plaintiff] for an incorrect review determination by depriving the [CIT] of the ability to assess dumping duties . . . . [W]e conclude that the consequences of liquidation do constitute irreparable injury."). Here, however, Sumec has obtained the Statutory Injunction in the countervailing duty case, thereby preventing liquidation of the same entries in the present antidumping duty case. *See* Statutory Inj. at 1–2. The Statutory Injunction enjoins liquidation for entries of subject merchandise made "on or after January 1, 2015 up to and including December 31, 2015," *id.*, and this time period completely overlaps with the thirty-nine-day period at issue in this case, i.e., from October 15, 2015, to November 23, 2015, *see* J.A. 56–57. Sumec's citation to an example where the CIT, in two separate cases, issued two injunctions that overlapped by covering the same entries is unavailing, *see* Appellant's Br. 23–24 (citations omitted), because Sumec fails to cite to precedent that *requires* such overlapping injunctions, *see generally id.* We will not constrain the CIT's discretion by imposing this type of acontextual rule. *See Wind Tower*, 741 F.3d at 95 (recognizing that the CIT is afforded discretion when deciding requests for preliminary injunctions). Under these circumstances, Sumec's entries are currently protected from liquidation due to the Statutory Injunction. *See* Statutory Inj. at 1–2. Even if the Statutory Injunction is dissolved, nothing would then prevent Sumec from immediately seeking a temporary restraining order ("TRO") or preliminary injunction in the underlying antidumping duty case. *See* USCIT R. 65(a)–(b) (authorizing the CIT to issue TROs and preliminary injunctions).

Second, the CIT did not commit legal error in determining that the availability of reliquidation means that Sumec failed to demonstrate irreparable harm. In *Shinyei*, which

involved an action contesting Commerce's liquidation instructions pursuant to § 1581(i), we recognized that the CIT's equitable powers allowed it to order reliquidation in a § 1581(i) action ("*Shinyei* relief"). 355 F.3d at 1305, 1312. We explained the CIT has "broad remedial powers" under 28 U.S.C. § 2643(c)(1), which "allows the [CIT] to 'order *any other relief that is appropriate* in a civil action,'" meaning the CIT may order reliquidation even in "[t]he absence of an express reliquidation provision." *Id.* at 1312 (ellipsis omitted). On the other hand, we have found it unclear whether *Shinyei* relief is available in two cases brought under § 1581(i). In *Ugine*, we reversed the CIT's denial of a motion for a preliminary injunction in a case challenging Commerce's liquidation instructions as applying an improper "country-of-origin designation[] for entries that have not [yet] been liquidated" for an earlier administrative review, even though Commerce determined in a later administrative review to apply the country-of-origin designation argued for by the challenger. 452 F.3d at 1293; *see id.* at 1290. We explained that, although "*Shinyei* appears to provide [the challenger] with an avenue for seeking a judicial remedy . . . because [the challenger], like [the party in *Shinyei*], challenges only Commerce's liquidation instructions," "the possibility that *Shinyei* will not be interpreted to encompass the sort of claim at issue here . . . raises doubt whether [the challenger] will have the opportunity to obtain reliquidation once its entries are liquidated." *Id.* at 1296. We distinguished *Shinyei*, where the "complaint alleged a violation of 19 U.S.C. § 1675(a)(2)(C),"[7] on the basis that the challenger in *Ugine* did not rely on § 1675(a)(2)(C) and "instead contended that

---

[7]    Section 1675(a)(2)(C) provides that the determination in a particular administrative review "shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties."

Commerce's instructions for entries imported prior to the [later] administrative review are inconsistent with Commerce's determination in th[at later] administrative review." *Id.*

Similarly, in *American Signature*, we reversed the CIT's denial of a motion for a preliminary injunction, in a case challenging Commerce's authority to issue certain corrected liquidation instructions that sought to remedy "a computer programming error in Commerce's antidumping margin calculation." 598 F.3d at 821; *see id.* at 821–22. "[W]e conclude[d] that the possibility of *Shinyei* relief does not defeat [plaintiff]'s claim of irreparable harm," without further explanation for why *Shinyei* relief may be lacking in that case. *Id.* at 829.[8] Ultimately, in both cases, we determined "the availability of *Shinyei* relief to [the plaintiff] is uncertain," and did not defeat the plaintiff's showing of irreparable harm. *Id.*; *see Ugine*, 452 F.3d at 1297 (explaining that "it is not clear at this juncture" that *Shinyei* relief would be available to the challenger). Admittedly, neither case is a model of clarity for establishing when *Shinyei* relief may be unavailable in § 1581(i) actions challenging Commerce's liquidation instructions or when a sufficient showing of irreparable harm can be established by the potential of such relief being unavailable. We certainly, however, do not read *Ugine* and *American Signature* as creating a presumption that, in the preliminary injunction

---

[8]    Although not addressed in our *American Signature* decision, the underlying complaint there expressly referenced § 1675(a)(2)(C) to allege that Commerce's corrected liquidation instructions were erroneous as a matter of law, thereby distinguishing that case from *Ugine*. *Compare* Compl. ¶¶ 30–32, *Am. Signature, Inc. v. United States*, No. 09-00400 (Ct. Int'l Trade Sept. 18, 2009), ECF No. 6, *with Ugine*, 452 F.3d at 1296 (stating the challenger did not rely on § 1675(a)(2)(C)).

context, *Shinyei* relief is uncertain for purposes of irreparable harm in § 1581(i) actions because such a presumption runs counter to *Shinyei*'s holding that the CIT has "broad remedial powers," including the ability to order reliquidation.  355 F.3d at 1312.

In any case, *Ugine* and *American Signature* are inapposite here because the Government in this case has "represented unequivocally that, should Sumec prevail on the merits of this case, the [CIT] has the power to grant Sumec relief, including the authority to order the Government to reliquidate Sumec's entries" and that "Sumec would be entitled to refunds plus interest on any overpayments."  Appellee's Br. 25 (citation omitted); *see, e.g.*, *Ugine*, 452 F.3d at 1296 (acknowledging that the Government "was unwilling to take a position" on the availability of *Shinyei* relief).[9] Based on this representation, the Government would be judicially estopped from taking a contrary position regarding the CIT's authority to order reliquidation in this case. *See Trs. in Bankr. of N. Am. Rubber Thread Co. v. United States*, 593 F.3d 1346, 1353 (Fed. Cir. 2010) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [that party] may not thereafter, simply because [its] interests have changed, assume a contrary position . . . ." (internal quotation marks and brackets omitted)).  Accordingly, we conclude the CIT did not abuse its discretion in denying Sumec's request for

---

[9]    The Government straightforwardly maintained this position at oral argument.  Oral Arg. at 17:39–46, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2019-1015.mp3 ("If Sumec were to prevail on the merits, the Government would not challenge the [CIT] from ordering reliquidation."), 19:50–57 ("If they win on the merits, . . . we would believe that the rule [of *Shinyei*] would apply, which means the [CIT] would have the authority [to reliquidate].").

a preliminary injunction, based on its holding that Sumec failed to demonstrate irreparable harm. *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990) ("If [a preliminary] injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial."); *cf. Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505, 509 (Fed. Cir. 1987) (reversing a grant of a preliminary injunction where the CIT's "finding of irreparable injury was clearly erroneous," without consideration of the other three factors).

CONCLUSION

We have considered Sumec's remaining arguments and find them unpersuasive. Accordingly, the Opinion and Order of the U.S. Court of International Trade is

**AFFIRMED**

COSTS

No costs.